## No. 5166.

### L. H. GARDNER & Co. *v.* J. J. McDANIEL & Co.

From all the evidence on record in this case it results that the defendants, when they drew the draft sued upon, had a just right to believe that it would be duly honored. Therefore, they were entitled to due protest and notice of the dishonor of the bill. With regard to the promise of payment alleged to have been made by the defendants, it was coupled with conditions which were not accepted, and for that reason it can not entitle the plaintiffs to recover.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J. T. M. Gill,* for plaintiffs and appellants. *E. D. White, Samuel Jamison, Jr.,* for defendants and appellees.

TALIAFERRO, J. This suit is brought upon a bill drawn by defendants, merchants residing in Texas, upon Gregg & Ford, of Shreveport, La., in favor of the plaintiffs for $840 30. The bill is dated January, 13, 1873, and made payable ten days after date. Not being paid, it was protested on the twentieth of March following.

The suit was brought by attachment of a lot of merchandise in New Orleans. The answer is a general denial. The case was first decided in favor of plaintiffs; but upon affidavit made of new evidence discovered, a new trial was granted, the result of which was the rendition of a judgment against the plaintiffs of nonsuit. On the part of the plaintiffs an appeal is taken. The defense rests upon want of due protest and notice. It appears that for several years previous to the date of this draft, there had been an established course of business between J. J. McDaniel & Co., of Mount Carmel, in Texas, and Gregg & Ford, of Shreveport, Louisiana. The Texas merchants had been in the habit of shipping to their friends Gregg & Ford, cotton and other commodities of trade, and the latter had accepted and paid drafts drawn upon them by the defendants.

The prominent inquiry in the case is: Had J. J. McDaniel & Co., when they drew this draft, good reason to believe that Gregg & Ford would pay it? There is a large amount of evidence bearing mainly on this point. There is a portion of it contradictory. It is, however, fully shown that between the defendants and the house of Gregg & Ford, there was a regular business and to a large extent carried on. It is in proof that the defendants drew other drafts on Gregg & Ford about the same period that matured about the time the one sued upon was payable, and that the drawees paid them—that the draft in suit was placed in the hands of Gregg & Ford, the parties on whom the draft was drawn before its maturity, to await payment—that it was in other hands some days before it was due and was so held until it was protested nearly two months afterwards. McDaniel swears that, before drawing the draft, he had the agreement of Gregg & Ford not only to

draw this draft but others. This statement Gregg denies in his evidence, and says that he refused to accept unless placed in funds to pay it. This is flatly contradicted in turn by McDaniel. Taking it that these contradictory statements of the parties themselves, like opposite quantities in algebra, destroy each other, we are thrown back upon the consideration of the facts shown in regard to the circumstances under which the draft was drawn. There was a running account between McDaniel & Co., and Gregg & Ford at the time the draft was drawn and had been for several years before. The former had made frequent shipments to the latter of cotton, hides, etc., from time to time, and had often drawn drafts upon them which had been accepted and paid. During this continued course of business it appears that Gregg & Ford frequently paid drafts drawn upon them by defendants when at the time there was nothing standing to their credit, and even when the balance of account was against them. We have seen that other drafts drawn by them, falling due about the same time with that of the one in suit, were paid by the drawees. From all the evidence in the record we come to the conclusion that the defendants, when they drew the draft sued upon, had a just right to believe that it would be duly honored, and therefore, that they were entitled to due protest and notice of the dishonor of the bill. Parsons on Bills, vol. 1 pp. 532 to 539—p. 541, and note—9 La. 127; 19 La. 370; 3 An. 385; 20 An. 43.

But on the part of the plaintiffs it is contended that the defendants are bound by a subsequent promise to pay the draft. On this subject there is some confliction in the evidence; McDaniel's statement is, that he came to New Orleans a few days before the twentieth, without being aware of the non-payment of the draft sued on; that he was engaged about making purchases when the goods he had bought in the case of shipment, were attached by the plaintiffs in this suit; that he called at once at their store and on the next day went with Mr. Peet, one of the employes of the plaintiffs, to the office of John T. Hardie & Co., his merchants, and while there, he informed Mr. Peet either himself or through Mr. Nicholson, a member of the firm of Hardie & Co., that if Gardner & Co., would ascertain by telegram whether the draft had actually been paid or not he would pay it, provided Gardner & Co. discontinued the suit, paid all the costs and replaced the goods in the same position they were before the attachment.

This statement is corroborated by Nicholson, a member of the firm of Hardie & Co., who says that the conditional offer made by McDaniel, and by himself for McDaniel, was not carried out because Gardner & Co., presented him all the bills of costs and insisted upon their payment along with the draft. The firm of Hardie & Co. had agreed, it seems, with McDaniel, to pay the draft for the firm of McDaniel &

Co., on the terms proposed by McDaniel; and Nicholson testifies that, when the draft and all the bills of costs and expenses of the attachment were presented to him for payment, he refused to have anything to do with it. There is nothing going to show that this testimony of Nicholson is not strictly true. The evidence, we conclude, preponderates in favor of the defendants, in regard to the promise, and establishes that any offer that may have been made by McDaniel to pay the draft was made expressly on the condition that the plaintiffs should withdraw their attachment suit, pay all the costs of the proceeding and restore his goods in the condition they were before they were attached and taken out of his possession. This offer was not accepted, and the plaintiffs have no right to require the defendants to make payment solely on their own terms.

We think the judgment of the lower court correct.

Judgment affirmed.

Rehearing refused.